IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KIRK MACKEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| vs. | ) | |
| | ) | Case No. 4:25-CV-06113 |
| YAZI INC, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

COMES NOW, KIRK MACKEY, by and through the undersigned counsel, and files this, his Complaint against Defendant, YAZI INC, pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA") and the ADA's Accessibility Guidelines, 28 C.F.R. Part 36 ("ADAAG"). In support thereof, Plaintiff respectfully shows this Court as follows:

## JURISDICTION

1.     This Court has original jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims pursuant to 42 U.S.C. § 12181 *et seq.*, based upon Defendant's failure to remove physical barriers to access and violations of Title III of the ADA.

## PARTIES

2.     Plaintiff, KIRK MACKEY (hereinafter "Plaintiff") is, and has been at all times relevant to the instant matter, a natural person residing in Houston, Texas (Harris County).

3.     Plaintiff is disabled as defined by the ADA.

1

4.      Plaintiff is required to traverse in a wheelchair and is substantially limited in performing one or more major life activities, including but not limited to: walking and standing.

5.      Plaintiff uses a wheelchair for mobility purposes.

6.      In addition to being a customer of the public accommodation on the Property, Plaintiff is also an independent advocate for the rights of similarly situated disabled persons and is a "tester" for the purpose of enforcing Plaintiff's civil rights, monitoring, determining and ensuring whether places of public accommodation are in compliance with the ADA.  His motivation to return to a location, in part, stems from a desire to utilize ADA litigation to make Plaintiff's community more accessible for Plaintiff and others; and pledges to do whatever is necessary to demonstrate the plausibility of Plaintiff returning to the Property once the barriers to access identified in this Complaint are removed in order to strengthen the already existing standing to confer jurisdiction upon this Court so an injunction can be issued correcting the numerous ADA violations on this property. ("Advocacy Purposes").

7.      Defendant, YAZI INC (hereinafter "YAZI INC"), is a domestic company that transacts business in the State of Texas and within this judicial district.

8.      Defendant, YAZI INC, may be properly served with process for service via its Registered Agent, to wit:  c/o Hamza Haneef, Registered Agent, 5522 Pound Stone Ct., Sugar Land, TX  77479.

**FACTUAL ALLEGATIONS**

9.      On or about October 2, 2025, Plaintiff was a customer at "KKJ Mart," a business located at 14409 State Highway 249, Houston, TX  77086, referenced herein as "KKJ Mart".  *See* Receipt attached as Exhibit 1.  *See* also photo of Plaintiff attached as Exhibit 2.

2

10.    Plaintiff was also a customer on October 2, 2025 at Mariscos La Costa Sinaloa, a restaurant located at 14449 State Highway 249, Houston, TX  77086, referenced herein as "Mariscos La Costa".  *See* Receipt attached as Exhibit 3.  *See* also photo of Plaintiff attached as Exhibit 4.

11.    Defendant, YAZI INC, is the owner or co-owner of the real property and improvements that both KKJ Mart and Mariscos La Costa Sinaloa are situated upon and that is the subject of this action, referenced herein as the "Property."

12.    Plaintiff's access to KKJ Mart and Mariscos La Costa Sinaloa located at 14409 and 14449 State Highway 249, Houston, TX  77086, Harris County Property Appraiser's property identification numbers: 0471270000014 and  0471270000028 ("the Property"), and/or full and equal enjoyment of the goods, services, foods, drinks, facilities, privileges, advantages and/or accommodations offered therein were denied and/or limited because of his disabilities, and he will be denied and/or limited in the future unless and until Defendant, YAZI INC, is compelled to remove the physical barriers to access and correct the ADA violations that exist at the Property, including those set forth in this Complaint.

13.    Defendant, YAZI INC, as property owner, is responsible for complying with the ADA for both the exterior portions and interior portions of the Property.  Even if there is a lease between Defendant, YAZI INC and a  tenant allocating responsibilities for ADA compliance within the unit the tenant operates, that lease is only between the property owner and the tenant and does not abrogate the Defendant's independent requirement to comply with the ADA for the entire Property it owns, including the interior portions of the Property which are public accommodations.  *See* 28 CFR § 36.201(b).

14.    Plaintiff lives less than 8 miles from the Property.

3

15.     Given the close vicinity of the Property to the Plaintiff's residence, Plaintiff often travels by the Property.

16.     Plaintiff has visited the Property once before as a customer and advocate for the disabled.  Plaintiff intends to revisit the Property within six months after the barriers to access detailed in this Complaint are removed and the Property is accessible again.  The purpose of the revisit is to be a return customer to KKJ Mart and to Mariscos La Costa Sinaloa and to determine if and when the Property is made accessible and for Advocacy Purposes.

17.     Plaintiff intends on revisiting the Property to purchase and/or receive food and services as a return customer as well as for Advocacy Purposes but does not intend to re-expose himself to the ongoing barriers to access and engage in a futile gesture of visiting the public accommodation known to Plaintiff to have numerous continuing barriers to access, as such, Plaintiff is currently deterred from returning to the Property until the barriers to access are removed.

18.     Plaintiff travelled to the Property once before as a customer and as an independent advocate for the disabled, encountered the barriers to access the Property that are detailed in this Complaint, engaged those barriers, suffered legal harm and legal injury, and will continue to suffer such harm and injury as a result of the illegal barriers to access present at the Property.

19.     Although Plaintiff did not personally encounter each and every barrier to access identified in Plaintiff's Complaint, Plaintiff became aware of all identified barriers prior to filing the Complaint and because Plaintiff intends on revisiting the Property as a customer and advocate for the disabled within six months or sooner after the barriers to access are removed, it is likely that despite not actually encountering a particular barrier to access on one visit, Plaintiff may encounter a different barrier to access identified in the complaint in a subsequent visit as, for

4

example, one accessible parking space may not be available and he would need to use an alternative accessible parking space in the future on his subsequent visit. As such, all barriers to access identified in the Complaint must be removed in order to ensure Plaintiff will not be exposed to barriers to access and legally protected injury.

20.     Plaintiff's inability to fully access the Property and the stores within in a safe manner and in a manner which inhibits the free and equal enjoyment of the goods and services offered at the Property, both now and into the foreseeable future, constitutes an injury in fact as recognized by Congress and is historically viewed by Federal Courts as an injury in fact.

<u>COUNT I</u>
<u>VIOLATIONS OF THE ADA AND ADAAG</u>

21.     On July 26, 1990, Congress enacted the Americans with Disabilities Act 42 U.S.C. § 12101 *et seq*.

22.     Congress found, among other things, that:

(i)     some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

(ii)    historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

(iii)   discrimination against individuals with disabilities persists in such critical areas as employment, housing public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

(iv)    individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser service, programs, activities, benefits, jobs, or other opportunities; and

(v)    the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. § 12101(a)(1) - (3), (5) and (9).

23.    Congress explicitly stated that the purpose of the ADA was to:

(i)    provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(ii)    provide a clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

* * * * *

(iv)    invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101(b)(1)(2) and (4).

24.    The congressional legislation provided places of public accommodation one and a half years from the enactment of the ADA to implement its requirements.

25.    The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181; 28 C.F.R. § 36.508(a).

26.    The Property is a public accommodation and service establishment.

27.    Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice and Office of Attorney General promulgated federal regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

28.     Public accommodations were required to conform to these regulations by January 26, 1992 (or by January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181 *et seq.*; 28 C.F.R. § 36.508(a).

29.     The Property must be, but is not, in compliance with the ADA and ADAAG.

30.     Plaintiff has attempted to, and has to the extent possible, accessed the Property in his capacity as a customer at the Property as well as an independent advocate for the disabled, but could not fully do so because of his disabilities resulting from the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit his access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

31.     Plaintiff intends to visit the Property again in the very near future as a customer and as an independent advocate for the disabled, in order to utilize all of the goods, services, facilities, privileges, advantages and/or accommodations commonly offered at the Property, but will be unable to fully do so because of his disability and the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit his access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

32.     Defendant, YAZI INC, has discriminated against Plaintiff (and others with disabilities) by denying his access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of the Property, as prohibited by, and by failing to remove architectural barriers as required by, 42 U.S.C. § 12182(b)(2)(A)(iv).

33.    Defendant, YAZI INC, will continue to discriminate against Plaintiff and others

with disabilities unless and until Defendant, YAZI INC, is compelled to remove all

physical barriers that exist at the Property, including those specifically set forth herein, and make

the Property accessible to and usable by Plaintiff and other persons with disabilities.

34.    A specific list of unlawful physical barriers, dangerous conditions and ADA

violations which Plaintiff experienced and/or observed, or was made aware of prior to the filing of

this Complaint, that precluded and/or limited Plaintiff's access to the Property and the full and

equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of

the Property include, but are not limited to:

**ACCESSIBLE ELEMENTS:**

      i.    In front of Mariscos La Costa Sinaloa, the access aisle to the accessible parking space is not level due to the presence of an accessible ramp in the access aisle in violation of Section 502.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as the lift from the van may rest upon the ramp and create an unlevel surface.

      ii.    In front of Mariscos La Costa Sinaloa, the accessible curb ramp is improperly protruding into the access aisle of the accessible parking space in violation of Section 406.5 of the 2010 ADAAG Standards. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as the lift from the van may rest upon the ramp and create an unlevel surface.

iii.    In front of Mariscos La Costa Sinaloa, the accessible ramp side flares have a slope in excess of 1:10 in violation of Section 406.3 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property because steep slopes on ramp side flares could cause the wheelchair to tip over and injure Plaintiff.

iv.    Throughout the accessible routes on the Property, there are numerous openings in the ground surfaces with widths exceeding ½ inch which would potentially cause the wheel of Plaintiff's wheelchair to get stuck in the gaps and increasing the potential for Plaintiff's wheelchair to tip over in violation of Section 302.3 of the 2010 ADAAG Standards.

v.    Nearest KKJ Mart, the access aisle to the two accessible parking spaces is not level due to the presence of an accessible ramp in the access aisle in violation of Section 502.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as the lift from the van may rest upon the ramp and create an unlevel surface.

vi.    Nearest KKJ Mart, the accessible curb ramp is improperly protruding into the access aisle of the accessible parking spaces in violation of Section 406.5 of the 2010 ADAAG Standards.  This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as the lift from the van may rest upon the ramp and create an unlevel surface.

vii.    Nearest KKJ Mart, there are two accessible parking spaces that are missing identification signs in violation of Section 502.6 of the 2010 ADAAG

standards. This barrier to access would make it difficult for Plaintiff to locate an accessible parking space.

viii.    Inside KKJ Mart, the interior has walking surfaces leading to the restrooms lacking a 36 (thirty-six) inch clear width, in violation of Section 403.5.1 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to properly utilize public features at the Property because the width of Plaintiff's wheelchair would prevent passage through areas with a width less than 36 inches.

ix.    Inside KKJ Mart, the interior has walking surfaces leading to the restrooms lacking a 36 (thirty-six) inch clear width. As a result, the Property lacks an accessible route connecting the exterior of the Property to all accessible elements and features inside the Property in violation of Section 206.2.4 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to access public features of the Property due to the lack of a safe accessible route leading from the exterior to interior spaces inside the Property.

x.    Defendant fails to adhere to a policy, practice and procedure to ensure that all facilities are readily accessible to and usable by disabled individuals.

**KKJ MART RESTROOMS**

xi.    The door to the restrooms has a maximum clear width below 32 (thirty-two) inches in violation of Section 404.2.3 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to safely utilize the restroom facilities as wheelchair typically has a clear width of between 30 and 32 inches and the wheelchair will not be able to

fit through the doorway to access the restroom. In the case that the wheelchair may barely fit through, the tight doorway would likely injure Plaintiff's hands as they could get caught between the wheel and the doorway.

xii. The restroom lacks signage in compliance with Sections 216.8 and 703 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to locate accessible restroom facilities.

xiii. The door hardware providing access to the restrooms requires tight grasping and twisting of the wrist in violation of Section 404.2.7 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to utilize the restroom facilities.

xiv. There is inadequate clear floor space for the toilet in violation of Section 604.3.2 of the 2010 ADAAG standards. This barrier to access would make it difficult for the Plaintiff and/or any disabled individual to safely utilize the restroom facilities.

xv. The restroom lacks adequate clear floor space for the sink in violation of Section 606.2 of the 2010 ADAAG standards. This barrier to access would make it difficult for the Plaintiff and/or any disabled individual to safely utilize the restroom facilities.

xvi. The actionable mechanism of the paper towel dispenser in the restroom is located outside the maximum prescribed vertical reach range of 48 inches above the finished floor as set forth in Section 308.2.1 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to reach the actionable mechanism of the paper towel dispenser as

11

individuals in wheelchairs are seated and have significantly less reach range than individuals who stand up.

xvii. The required grab bars/handrails adjacent to the commode are missing and violate Section 604.5 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to safely transfer from the wheelchair to the toilet and back to the wheelchair.

xviii. The door exiting the restroom lacks a clear minimum maneuvering clearance, due to the proximity of the door hardware within 18 inches to the adjacent sink, in violation of Section 404.2.4 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to safely exit the restroom due to the fact individuals in wheelchairs have their feet sticking out in front of them and when there is inadequate clearance near the door (less than 18 inches), their protruding feet block their ability to reach the door hardware to open the door.

**MARISCOS RESTROOMS**

xix. The required grab bars/handrails adjacent to the commode are missing and violate Section 604.5 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to safely transfer from the wheelchair to the toilet and back to the wheelchair.

xx. The distance of the centerline of the toilet is less than 16" from the side wall. As a result, the toilet is not adequately positioned from the side wall positioning in violation of Section 604.2 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to

safely utilize the restroom facilities.

xxi.　The toilet paper dispenser serving the accessible toilet is not positioned seven to nine inches in front of the toilet and therefore is in violation of Section 604.7 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to utilize the toilet due to the fact the toilet paper dispenser is at an improper distance from the toilet, given Plaintiff's disability, Plaintiff would not be able to get up and reach the toilet paper.

xxii.　Restrooms have a sink with inadequate knee and toe clearance in violation of Section 306 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to utilize the restroom sink as Plaintiff is seated in a wheelchair and, when seated, Plaintiff's feet and legs protrude out in front.  In order to properly utilize a sink, Plaintiff's legs must be able to be underneath the surface of the sink, but due to the improper configuration of the sink, there is no room underneath for Plaintiff's legs and feet.

xxiii.　The restroom lacks signage in compliance with Sections 216.8 and 703 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to locate accessible restroom facilities.

35.　The violations enumerated above may not be a complete list of the barriers, conditions or violations encountered by Plaintiff and/or which exist at the Property.

36.　Plaintiff requires an inspection of the Property in order to determine all of the discriminatory conditions present at the Property in violation of the ADA.

37.    The removal of the physical barriers, dangerous conditions and ADA violations alleged herein is readily achievable and can be accomplished and carried out without significant difficulty or expense. 42 U.S.C. § 12182(b)(2)(A)(iv); 42 U.S.C. § 12181(9); 28 C.F.R. § 36.304.

38.    All of the violations alleged herein are readily achievable to modify the Property into compliance with the ADA due to the fact the modifications necessary to cure the barriers to access identified in paragraph 34 of this Complaint are the specific types of barriers listed in 28 C.F.R. § 36.304 as readily achievable to modify.

39.    Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because the nature and cost of the modifications are relatively low.

40.    Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because Defendant, YAZI INC, has the financial resources to make the necessary modifications.  According to the Property Appraiser, the Appraised value of both Property is $1,288,859.00.

41.    The removal of the physical barriers and dangerous conditions present at the Property is also readily achievable because Defendant has available to it a $5,000.00 tax credit and up to a $15,000.00 tax deduction from the IRS for spending money on accessibility modifications.

42.    Upon information and good faith belief, the Property has been altered since 2010.

43.    In instances where the 2010 ADAAG standards do not apply, the 1991 ADAAG standards apply, and all of the alleged violations set forth herein can be modified to comply with the 1991 ADAAG standards.

44.    Plaintiff is without adequate remedy at law, is suffering irreparable harm, and reasonably anticipates that he will continue to suffer irreparable harm unless and until Defendant,

YAZI INC, is required to remove the physical barriers, dangerous conditions and ADA violations that exist at the Property, including those alleged herein.

45.    Plaintiff's requested relief serves the public interest.

46.    The benefit to Plaintiff and the public of the relief outweighs any resulting detriment to Defendant, YAZI INC.

47.    Plaintiff's counsel is entitled to recover its reasonable attorney's fees and costs of litigation from Defendant, YAZI INC, pursuant to 42 U.S.C. §§ 12188 and 12205.

48.    Pursuant to 42 U.S.C. § 12188(a), this Court is provided authority to grant injunctive relief to Plaintiff, including the issuance of an Order directing Defendant, YAZI INC, to modify the Property to the extent required by the ADA.

WHEREFORE, Plaintiff prays as follows:

(a)    That the Court find Defendant, YAZI INC , in violation of the ADA and ADAAG;

(b)    That the Court issue a permanent injunction enjoining Defendant, YAZI INC, from continuing their discriminatory practices;

(c)    That the Court issue an Order requiring Defendant, YAZI INC  to (i) remove the physical barriers to access and (ii) alter the Property to make it readily accessible to and useable by individuals with disabilities to the extent required by the ADA;

(d)    That the Court award Plaintiff his reasonable attorneys' fees, litigation expenses and costs; and

16

(e)      That the Court grant such further relief as deemed just and equitable in light of the

circumstances.

Dated: December 18, 2025

Respectfully submitted,

/s/ Douglas S. Schapiro
Douglas S. Schapiro, Esq.
Southern District of Texas ID No. 3182479
The Schapiro Law Group, P.L
7301-A W. Palmetto Park Rd., #100A
Boca Raton, FL 33433
Tel: (561) 807-7388
Email: schapiro@schapirolawgroup.com